Okay, good morning, gentlemen. Thank you for appearing in this unusual setting. As we've told everybody yet, we realize you're all in, we think we're all in Louisiana, and we will, those of us who are not there wish we were in New Orleans. And hopefully we will be back pretty soon. But in any case, we have a couple of special rules for this kind of hearing. Well, one of them is not special, it's ordinary, we're not allowing video or audio recordings or photographs of the hearing, we would ask you please to turn off any mute any cell phones that you have. So we were not interrupted. And then we always appreciate record citations when you can give us those, particularly in a complex deal like this. And we will give you each five. Well, maybe not Mr. Gibson, but Mr. Cochran and Mr. Marino may each have five minutes uninterrupted. And Mr. Gibson, you can have two minutes uninterrupted. So with that, we'll call number 19-507, sorry, 19-30995 Colonial Oaks Assisted Living versus Haney Development. And Mr. Cochran will speak first. Yes, may it please the court, Doug Cochran representing Colonial Oaks Assisted Living, Lafayette LLC, and Colonial Oaks Memory Care, Lafayette LLC, and they'll be referred to as buyers often in this argument. Magistrate Judge Hanna misinterpreted the factual basis for the service plans, and you'll hear a lot about those. The PCSPs were false when Nicole created them before the buyers were involved and were still false when, one, the APAs were signed and the representations and warranties were made that all healthcare laws were complied with. Two, they were false during due diligence when false information was provided to the buyers as to the residents at Rosewood. Three, and false when the closing occurred. At each of those steps, Nicole intended to and did commit fraud. The PCSPs did not have to be created during the time the buyers were purchasing the property because the representations and the warranties stated that healthcare laws were complied with despite Nicole knowing that they were not. The actions regarding Maurice and Joyce Haney as to Cedar Crest and the hiring of nurses is also completely straightforward. RNs were needed at Cedar Crest. Cedar Crest residents by nature are memory care residents and cannot administer their own medications, so RNs are required by law to be at that facility. Not to mention that the actions at Cedar Crest also highlight basically the running of Rosewood as a memory care unit. In other words, Rosewood was not supposed to have patients that could not administer their own medications and Rosewood had 30 to 40 of those type residents, so it was being run as a memory care unit and that sort of compounds the issue with the staffing and goes along with the Cedar Crest issues. Moe and Joyce knew the Cedar Crest and how it was being run. Moe and Joyce hit it from the buyers and it being hit it affected the price and the pro forma and the buyers were damaged. Now, Magistrate Judge Hanna correctly stated the root of the buyers argument is the non-qualifying residents. The PCSPs failed to and the judge even pointed out in which case an RN or other appropriately licensed staff would be needed. However, Judge Hanna misapplied the buyers allegations when he analyzed the buyers argument on the non-qualifying residents and the false PCSPs. The PCSPs are important not only because they were fraudulently completed, however, the fraudulent PCSPs did not have to be falsely completed during the time that the buyers were potential buyers as Judge Hanna grasped upon. The fact that Nicole Haney had fraudulently completed the PCSPs is a fact alleged that becomes important because the sellers contractually represented and warranted in each APA that each of the facilities, Rosewood and Cedar Crest, were in material compliance with applicable law and specifically all applicable health care laws and they were not. The APA was signed on March 31, 2016 and this representation and warranty was made. Then due diligence occurred and Nicole was placed in charge of sending the due diligence material. Nicole sends over on behalf of the corporation, he sends over the Rosewood manual and the Rosewood manual says only residents in could administer their medications. So, in other words, LPNs and RNs are not needed and this was just absolutely not true. He knew this because he fraudulently had completed the PCSPs and further had been confronted by non-nurse workers who were uncomfortable giving meds to the residents that were not able to self-administer. Now, why is this self-administration issue so important? Well, when residents can self-administer, there's no LPNs and there's no RNs needed at the facilities. The facility staffing is less, profits go up because the payroll is less and buyers relied upon this during the due diligence period to prepare their pro formas and reach a purchase price. Had sellers been following their own Rosewood manual, then a large to be housed at Rosewood. They could not self-administer their medications and that greatly impacts the value of Rosewood. Mr. Cochran, your amended complaint, you use the terms administer, administering medications repeatedly and of course under chapter 68, those terms have specific meanings and I'm trying to figure out how should we understand them in the context of your complaint? The administration of medications, you're right, it can mean different things but as far as for example at Rosewood, if a patient cannot know what the medication is, know what it's for, then they are not capable of self-administering. Go ahead. I'm sorry. No, go ahead. And title 68 says that quite clearly and you have to have an LPN, a supervised by an RN in order to give medications to those individuals, to hand them out. Okay, your amended complaint also says that as instructed and I just wonder what does that phrase as instructed mean? As instructed by Nicole, give the medications to him because I'm telling you to administer those medications to those patients even though they are incapable of knowing what those are. Where did the medication prescriptions come from? The medication prescriptions would have come from the doctor for that patient. And you're saying there was not a single staff person at Rosewood that was a medical person? There were no LPNs or RNs at Rosewood per the due diligence material. And what do you say about the requirement, apparently there's a legal requirement that these PCSPs be a collaborative effort of the stakeholders, which means the patient and the patient's representative and the doctor as well as the nursing home. Well, I agree with that, your honor, but that was not being followed and that is alleged that Nicole falsely prepared the PCSPs. And as you noticed in title 68, they're also supposed to be every quarter of the year are supposed to be updated. And that is also had not been done, your honor. But your due diligence would have discovered that, I assume. Well, the due diligence, your honor, is one of the factors of what will... Did we make a plausible claim to survive 12B6? What occurs at the trial of this matter will be the testimony of many witnesses and the self-administration of the medication is going to be one of them. And the preparation of the PCSPs, when they were done, how they were done, will also be part of the testimony. But the allegations that were asserted is that Nicole falsely prepared those, knew that he did not have staff at that facility because during the due diligence, and this is to your question, your honor, during the due diligence, my client asked for the manual for Rosewood. And Rosewood manual clearly provides that the only patients at Rosewood are those that can self-administer. Therefore, you're not going to have LPNs and RNs on the rest of the due diligence and the staffing materials that were provided during the due Is there a misleading aspect to the due diligence all throughout this entire process? Could I ask what was the basis of the arbitration award? The arbitration award was for some of the vacation and sick time true up amount. That was what the I mean, the arbitrator felt could be arbitrated. And then he severed the misrepresentation and contractual fraud claims to come to you guys because the amount of that exceeded the holdback amounts of $660,000. So he felt he didn't have the authority to make that arbitration award. Well, in the due diligence, wasn't your client basically given free run of the facility for about eight months? I mean, couldn't your clients have walked, I mean, presumably they were knowledgeable buyers and it wouldn't have taken a whole lot of acumen for them to walk through the facility from day to day and figure out on their own that these clients at Rosewood could not self administer? Well, your honor, that goes back to the prior question. Whenever you're being whenever fraud is being committed, and you're being given materials that are on their face, extremely clear. Well, like, well, obviously, if it's during the period of due diligence, your client, if your client had the right to examine the status of the places during due diligence, and and it certainly had a period of eight months. I'm just asking, did they ever for, you know, limit the amount to which your client could be exposed to the facilities? No, your honor. And no, I admit that in that in the due diligence materials, in the APA, they had the right to go into that facility. And my argument to that is they were provided materials that on the face did not rise to the issue of checking out the facilities to that degree on the on the stance of the patient population when the resident population is clearly provided in the Rosewood manual. Um, now on to more on to the fraud. One of the things that Judge, I mean, Majesty Judge Hannah leaped upon the issue of the timing of the omission of true information. Now, the simple definition of suppression or omission is clearly implying that if you're going to suppress a fact, it is a fact that has already occurred. And you're either hiding it, suppressing it, or you're admitting it. Clearly, the timing issue seized upon by Majesty Judge Hannah is not the applicable time period here because the fraud occurred during the entire interactions among my client and the sellers. Because he jumped to the conclusion that the PCSPs were created in that action time point, he found that Nicole did not commit fraud. And then he uses that basis for the finding that if you can't have if Nicole did not commit fraud, then the sellers did not commit fraud. So, he compounded the issue as to the sellers. The allegations are clear, direct, and sustained. Just because the fraud is so direct, so not complicated, does not make it any less fraudulent. Um, hiding in plain sight, you might say. Let me ask you a question about Cedar Creek, since your time is running low. Yes. Your claim there turns on an interpretation of the relevant statute, does it not? Yes, Your Honor. You contend that LPNs could not administer medication without an RN being on staff, right? That is correct, Your Honor. It also hinges upon that, uh, there's allegations that my client spoke with the Department of, um, I'm sorry, the sellers spoke with the Department of Health and Hospitals and were told that an RN was needed at Cedar Crest. Well, but the statute says medications shall be administered by an individual who is currently licensed as an RN or an LPN by the appropriate agency. So, that seems to me to be in the alternative and not a commandment that an RN supervise an LPN. Well, Your Honor, I agree with your reading of that, but an RN, they could have hired just an RN at an exorbitant price, more so than an LPN, and the RN could give that medication. But they could not, on the converse, hire just an LPN to administer that medication, because by law, an RN, it's like a paralegal doing work. I don't agree with you. You are not agreeing with the way I'm reading the statute. No, I am, Your Honor. I'm just saying that the statute says that an RN can give the medication or an LPN can give the medication, but under the entire law in Louisiana, the LPN has to be under the supervision of an RN. Or a doctor. Yes, Your Honor. They could have had a doctor come. If the doctor told, if the doctor wrote the, so you're saying it's not possible for the doctor to write the prescription and the LPNs to dispense the prescriptions? That is correct, Your Honor, and that is based upon the allegation that Lori DeLatt and Joyce Haney spoke to the Department of Health and Hospitals, and during that conversation, they were told under the current law of Louisiana in Title 68 and revised statutes, that an RN was needed at that facility to administer the medications or the LPN supervised them. And you found that, your client found that out only after they had done all their due diligence and purchased the company and put up the money, right? Your Honor, the allegation is that my, yes, that my client spoke with Lori DeLatt after the purchase and learned that information. Okay, all right, thank you. You have time for rebuttal. We're here for Mr. Marino. Thank you, Your Honors. Lawrence Marino here for Appellees Haney Development, Inc. and Cedar Crest, LLC, which will be referred to as sellers, as well as Maurice and Joyce Haney individually. First, we can dispose of any argument that this case involves anything other than a fraud claim. The purchase agreement and clauses requiring arbitration required all matters related to the purchase to be arbitrated, including, expressly including, breach of a representation. The only exception was for fraud, bad faith, or intentional misconduct. Negligent misrepresentation or breach of contract or whatever buyers want to call their claim are none of these things, and so these claims had to be arbitrated. The buyers argue their basis is that the arbitrator dismissed only claims involving fraud, as if this was somehow different from fraud claims. At best, this is a semantic difference. They based their argument on Order 8 by the arbitrator, but the nature of the fraud claim or even the fraud claim weren't before the arbitrator of that matter. That order dealt with attorney's fees. Order 5 did deal with the fraud claim, and the arbitrator expressly dismissed a fraud claim for intentional misrepresentation. Buyer's argument is irrelevant anyway, because regardless of whatever the arbitrator dismissed, negligent misrepresentation claims could only be brought in the arbitration, and so the trial court correctly ruled that the Even if a resident couldn't self-administer, the regulations don't require an ARCP, assisted living facility, to administer medication at all. It's a voluntary choice of an ARCP whether to do that, and there's numerous other options that are available. They can contract with a third party to do it. They can require the resident to contract with a third party to do it. They can terminate the resident, or in this case, they could have transferred the resident to Cedar LPNs. So once they bought Rosewood, the buyers were free to provide administration of medications or not. They chose to do so here, but this was their business decision, not a regulatory requirement, and buyers don't dispute this anymore. Instead, now what they're arguing is that the problem really wasn't the lack of nurses to administer medications. The problem is simply that there were residents that needed nurses for medications and that sellers were administering them using non-nurses, and they're saying now that this is really the complaint, the thing that they're complaining about, but that's not true. They repeatedly complain in their complaint about the need to hire nurses and only about the need to hire nurses as far as what their harm was. Paragraphs 22, 23, 26 of their petition, they talk about that they had to hire nurses. Paragraph 33, they did hire nurses. 35, they had to increase their fee to recoup the unanticipated costs of the nurses. 36, they couldn't increase the fees enough to cover the cost of the nurses. 60, the problem with the facilities was that they were understaffed. 62, when they count or recite their damages for their count one, they say the cost of the missing nurses was $5.6 million out of a total purchase price for both facilities of $16 million. They say the cost of the missing nurses was the problem, and that their financial problems, their claim was directly caused by the increases in nursing staff. Paragraph 78, their damages, and this is in count two, the damages were due to the increased staffing costs of the nurses. Their claim is not based on some abstract violation of the regulations, but on the requirement to hire nurses, but there was no such requirement. In addition, their pleadings fall far short of the standard required by Rule 9b, which of course requires stating the claim with particularity, detailing the who, what, where, why, when, how. As the trial court noted, the allegations, and in the Disney case that was cited by the trial court, the allegations must be sufficient to generate a strong inference of intent. It's a serious thing to accuse someone of fraud, and the law requires plaintiffs to back up such claims with facts from the outset. In particular, Section 6843B of the ARP DC regulations requires determination that a resident can or can't self-administer to be made by the resident's own decision. An ARCP cannot make that decision. Their staff can't make that decision. Sellers or the case couldn't make that decision. Without the resident's physician's determination that they're incapable of self-administering, the resident has the right to self-administer the medications, and sellers are authorized to provide staff assistance with that administration using staff who aren't nurses. Mr. Moreno, let me jump in real quick on a previous point you made. You've argued repeatedly that Colonial Oaks, they didn't have to hire RNs, they didn't have to hire LPNs to bring Rosewood into compliance if they could have taken other steps to do so. And I wonder why that argument, that point you're making, why doesn't that speak to the sort of measure of damages, the degree of damages, and not the existence of damages? Because if there are no damages, there's no standing, there's no claim. So there has to be a harm for any claim to proceed. And here, this is the very thing that they're complaining about, is these nurses. That's the only thing, the only facts they've alleged in terms of what this fraud was. And when they have no damages from it, when the reason they suffered any harm as a result of administration of medications or nurses is due to their own voluntary business decision, there's no claim for fraud. And on top of that, they've grossly failed to support- I guess they would view it as assuming that painting development did materially, assuming that your client did materially represent Rosewood's compliant status. I think Colonial Oaks would argue they're damaged because they received something other than what they bargained for. If there's no harm from that, then there is no claim. Well, that's breach of contract anyway, not fraud. Well, it's necessary for state- well, right. And it's necessary for standing as well. But on top of all this, the pleadings to get to that point are woefully lacking. We've been talking about the determination of the administration. It cannot be made by the buyers. It can't be made by the sellers. It can't be made by anybody but the- When you say it can't, that doesn't mean that it wasn't. If he's now alleging that the PCSPs were fraudulent, that would mean that they violated that rule, right? But did they allege that? Yes, but he has to plead facts under Rule 9b to get to that point, and he hasn't done it. So he just made the conclusory allegation that there was some violation because they couldn't administer, but without a physician, and the resident's own physician, in fact, making that decision, it's not the case. That's an essential fact for their claim that this was a violation. Mr. Marino, let me call your attention to the Regulation 6839, which says that the as identified in the PCSP, and then under subsection 1, it says in ARCP, the institution shall respond to changes in residents' needs for services by revising the PCSP, and if necessary, by adjusting its staffing. Now, the plaintiff has alleged that Ms. Hay was aware of the fact that some of the patients were not qualified to self-administer. She's received complaints from staff, and she directed staff to go ahead and administer the medication. Now, if she had that knowledge, why didn't that regulation put the burden on her to take the steps necessary to modify the PCSP? Because under 6843B, it says, the determination of the need for staff administration of medication will be made by the resident's physician after assessment of the residents in consultation with the residents and the legal representative and ARPC. Well, but under that regulation, wouldn't the would need to amend the PCSP. The Reg puts the burden on the institution to do that. But there's been no allegation of any of this, and even if they didn't do that, it's still the resident's physician's responsibility and authority, sole authority, to make that decision. He has to be told that it's needed, and the only person who has that right. That's possible, but we have no allegations in that regard. We have. Other words, he's switching the claim now. Is that what you're saying? Yes, Your Honor. That is what we're saying. In addition to the physician requirement in that same section, it does require that the whether a resident can self-administer must be stated in PCSP. And unless it is stated in the PCSP, the resident can self-administer, and the ARCP can provide staff assistance with that using non-nurses. And that's, of course, why this PCSP was so important. But there's no allegation regarding what the PCSP is actually required. Buyers Council mentioned it a while ago, but there's no pleading regarding what was in it. And this fails to satisfy the Rule 9b specificity requirements. And as Judge Jones, as you pointed out, the buyers had free run at this facility for nine, eight months to see if there was really any such problem. And if they missed it, you know, that's on them. This fails to meet the reasonable reliance requirement of a fraud claim, that their reliance has to be reasonable, on reliance on the supposedly fraudulent misrepresentation has to be reasonable. These are sophisticated operators of ARCPs who buy a facility and apparently didn't even walk through it to see what the residents were like. They just make this allegation suddenly after the fact. So, the details that are- Well, they do allege that they found that they discovered this after the sale. Right. So, would that be a question of fact of what due diligence required them to find? Well, I mean, something that costs one third of the entire value of the facilities, that's so central to their operation of the facility, I do think it is unreasonable for them not to have at least looked for that. And they had all of the wherewithal, and it's the availability of the wherewithal, not whether they did it, that's the hallmark of an unreasonable reliance. And I do note that the trial court had some question about whether, in fact, the only reason the first motion for dismiss seems to have been, well, the main reason was denied was because of some concern about privacy rights of the patient. But under TFR 164.501 and 506, there's an exception to the HIPAA privacy requirements for purchase of a facility. So, there was nothing that prevented them from learning anything that they needed to learn. But if I may, I see I'm running low on time. As to Cedar Crest, if I may move on, the regulations don't require- There's nothing in the regulations that actually requires hiring an RN to supervise LPNs. To the contrary, the regs expressly do authorize medications to be administered by an LPN. The only time the regulations mention supervision by an RN is in the specific context of intravenous therapy, that kind of administration of medications. And so, the exception proves the rule. There'd be no need to specify such a requirement for IV administration if it was required for all administration. Department of Health, which is the agency with expertise and authority, knew how to require an RN supervisory requirement if they wanted it, and they didn't. So, buyers are apparently arguing that a duty for supervision has to be inferred. But with this detailed and comprehensive set of regulations, a judicial insertion of such a requirement into that regime is not appropriate. Let me call your attention to Louisiana Civil Code of Practice, Article 5056, that says an LPN, quote, must practice under the direction of one of the following. That includes a physician or registered nurse. It goes further and says an LPN scope of practice includes administering medications, but only, quote, under the direction of a physician physician or an RN. So, there is some law that requires that. I have some, did the facility have a RN that was available for an LPN to confer with? Not to my knowledge. How did you comply with that general code article? Do you have knowledge? No, the code article I just quoted to you that an LPN can only administer medication under the supervision of either a doctor or an RN. Well, according to the ARCP regulations and the Attorney General's interpretation, it was of a statute, 37961, cited by the plaintiffs, which was, or the plaintiffs, which is, they claimed a requirement for supervision by an RN. So, I would assume it's similar. The Attorney General has addressed this already, and I know that's persuasive authority, not binding authority on the court, but he concluded that simply dispensing the medications in accordance with the prescription, which is what we described as administration of medications under the other Title 46 regulation, removal of 46379, 3709, removing an individual dose from a previously dispensed container, and giving it to somebody. The Attorney General interpreted the regulations of the ARPCs to allow this. In other words, the point would be that the prescription was made out by the doctor, the pharmacy delivered the pills to the facility, and then the LPNs dispensed the medication. We're talking about taking a pill out of a bottle and giving it to the resident. Now, whether they'd be able to give aspirin to the patients, it's not clear to me. I, more to me as I sit here. Yeah. I see my time has expired. Okay. You don't have an LPN, though. The reg requires the patient to be qualified to self-administer, does it not? If you don't have an LPN, it requires, yes, Your Honor. An LPN or more is required to administer within the definition of the ARPC regulations. Here, you had nurses of age doing the administering, right? Well, they were doing the assistance with the self-administration. Okay. Okay. We'll hear next from Mr. Gibson, and you only have five minutes, so. Thank you, Your Honor. May it please the Court, I'm Jim Gibson. I represent Nicole Haney. Nicole was the executive director of Rosewood, and keep in mind, Rosewood was an assisted living. It's not a nursing home, and it wasn't like Cedar Crest either with LPNs and RNs on staff. If you can check the change of the complaint that was originally filed to that which subsequently got filed in the briefing, what you'll notice from Colonial, when they started off, they claimed that Rosewood was in violation of all the law. Now, they've admitted that it were not, that it could self-administer, that self-administration comply with Louisiana law. That's in the trial record 1487, and basically, and a lot of this I know has been covered, but that the patient can do it, or the patient, if the patient is no longer available, if the doctor says that the patient is not able, then at that point, Nicole Haney, for the 20-something years that he was there at Rosewood, state never came down for one PC, PSCP, PCSP, excuse me, on them that there was incorrect, but at that point, Nicole would go to the patient or the patient's family, and he would tell them they can arrange for a third party, or if they can't do that, you can move to Cedar Crest, or you can move to another facility, and understand, as all of us that's dealt with elderly family members, it's a fluid situation, so one day, a patient might be able to do it, the next week, it may not. Let me ask you, what is the nature of the patients at Rosewood and Cedar Crest? Are they Medicare, Medicaid? Are they the upper-end people in assisted living, or the lower-end, or the average neighbors? They're all private pay, so I would say that's the upper-end. Upper-end, okay. Yes, ma'am. We've, well, Larry's already covered the eight months, and y'all have understood. You know, the allegation here is that staff members had come to Ms. Haney and complained to her that there were patients who were not qualified to self-administer, and she directed them to administer the drugs to anyone, so I mean, I understand you're giving us her side of it, but that's not what the plaintiff alleged. Now, Nicole's a man, and that is what's alleged against Nicole, so we're talking about apples to apples here, but Judge, I would just say this. Number one, they don't give what I would claim that under 9b they got to give, who, what, when, where, who are these people, when did they say it, what time frame are we talking about, but I would also suggest to you that that's not fraud. It might, if that's true, and I would just say that that is, Nicole Haney will testify if she ever has to, that isn't true, and we'll be able to cross-examine these people, but if that is, that may have been bad management for 20 years at Rosewood, but that's not fraud if that was going on, and that's what violated, what if it violated a regulation that she was complicit with? Well, if it violated regulation, that may be an issue that Rosewood would have had with the state of Louisiana, but that would have been a regulatory violation. I can't imagine a warranty in the sale. Well, Nicole is not a contract, he's not in the contract to the sale, first of all, I should have said that earlier. In other words, if Nicole, his percentage of the money, if that hadn't been delivered, he had no standing to sue Colonial and say you didn't pay me my money. He's not a part of the contract, but I understand what you're saying is when the entities that were part of the contract said that they have materially complied with all the laws, and they believed that they had, and we believe they have, if he's telling people that, is that a compliance with the law? I guess we can go in the quibble, is that a compliance if on Tuesday a patient suddenly couldn't administer and a doctor hadn't been looped in? What are you supposed to do from Tuesday to Friday to say to the doctor? I don't really have a good answer for that, Judge. I understand that would be an issue. A patient can come down with flu one weekend and suddenly not be communicative. I understand that's what people that run assisted livings and nursing homes and all, that's their life every day. That happens all the time. I would just suggest until the doctor is looped in and the doctor says this patient cannot do it, then we all are entitled with our doctors to say what we can and can't do. I know this doesn't get into interdiction and all, but we all have our rights to do what we can do. Obviously, Nicole Haney was there to protect these people from a situation that would go south for them. I notice my time's up, and I'm just going to finish and say the complaint does not allege fraud against Nicole Haney. We would ask that you affirm the rulings below. All right. Thank you. We'll hear from Mr. Cochran Rebuttal. What did Nicole Haney do when he was confronted at Rosewood by those non-nursing staff who were scared to death that they were violating the law by giving medications to patients who did not know what those medications were? What did Nicole do in that situation? Nicole said, give it to them or you're fired. If that's not fraud, then I don't know what is. Now, let's look at the two facilities, Rosewood and Cedar Crest. What happened in the context of is there an RN and an LPN needed? Okay. What happened at Cedar Crest? Cedar Crest is rolling along with an LPN, and Joyce Haney and Lloyd DeLatte meet with the Department of Health and say, no, you can't just have LPNs there giving out medications. You have to have an RN supervising them. They didn't hire an RN to do so. That is in and of itself fraud. Now, go back to what's happening at Rosewood. Rosewood has neither LPN or RN. You heard Mr. Marino say, no, there weren't LPNs running around Rosewood. Then they say all of what could be done after they buy this facility that they have been fraudulently given in the transaction. There's 30 or 40 residents in that facility that don't know their medications. We know that was true before the sale because of the staff that was worried about that concept of getting medications. Only people who didn't know that before the sale were your clients who had the full run of the facility. Let me suggest you may survive a motion to dismiss, but if your clients are sophisticated purchasers, they may have a tough time at trial. Your Honor, I think you're correct on whether or not we claim or not. We did. The claim is clearly plausible. We have not yet heard the testimony on this. I've been to many of a trial where when the testimony comes out, it's pretty darn clear what was going on. From the allegations in the petition, it is extremely evident as to what was being hid. Whether or not my client could rely upon the due diligence that he was given is a trial court to decide. Mr. Cochran, can you tell me where in your amended complaint point to me there your allegation that these PCSPs were knowingly and intentionally filled out incorrectly? I don't have the exact paragraph, but it's the paragraph talking about completing them falsely. The reason we know that they were completed falsely goes along with the requirement that I think Judge Davis pointed out or might have been Judge Jones, that those things had to be updated every quarter. All of a sudden, 30 or 40 patients don't change at the day of the trial. 30 or 40 patients were not qualified to self-administer? Yes, Your Honor. The issue comes down to the sellers were running Rosewood as if it was a memory care center. They had patients in there that were not capable of. That raises issues as to damages. I think Judge Willett hit the issue on damages. Day one, when we determined that there were 30 or 40 patients in there, all of those could have been thrown out. What does that do to your reputation? What does that do to your revenue? You have suddenly 30 or 40 vacancies, but that goes to damages. That goes to how we were harmed, not the fact that we were harmed. I think that the pleading, if you read that in context of what we discussed today, that there is a plausible claim and the testimony before the trial court will come out as to exactly the fraudulent actions of Nicole, Joyce, and Mo. You got to remember, this is allegations against all three. This is not just allegations against one of these, but it was all done together. Thank you, Your Honors, for hearing us today. All right. Thank you very much. I appreciate your time. Court will stand in recess. Thank you, Your Honors. Thank you.